# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEREY PROPERTY ASSOCIATES ANAHEIM, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut Corporation, et al.<br><br>Defendants. | Case No. 3:20-cv-00077-LAB-AGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Monterey Property Associates Anaheim, LLC ("MPAA") brought this action against its insurer, Defendant Travelers Property Casualty Company of America, asserting claims for breach of contract, tortious breach of the duty of good faith and fair dealing, and declaratory relief. MPAA alleges that Travelers acted in bad faith by refusing to defend and indemnify MPAA after MPAA's commercial tenant, LA Fitness, sued MPAA for loss of use of its swimming pool. Travelers now moves for summary judgment on all claims, contending that its denial of coverage was proper under MPAA's insurance policy.

There's no genuine dispute that MPAA could only be liable for the closure of the pool if it resulted from roof damage that MPAA knew of at the time it purchased the policy. The Court finds that any such resulting loss of use is a "continuation, change or resumption" of the roof damage under the Policy, and so it falls within the Policy's exclusion for known losses. Travelers didn't breach any duty to MPAA by declining coverage for an excluded loss, and so its motion for summary judgment is **GRANTED**. (Dkt. 20.)

## BACKGROUND

MPAA is a commercial landlord that owns a shopping center that housed a health club and swimming pool operated by LA Fitness. (Joint Statement of Undisputed Facts, Dkt. 18 ¶¶ 1–3.) In September 2013, MPAA's roofing inspector told it that "the plywood [incorporated in the roof over the pool area] [was] rotted completely through." (Dkt. 18 ¶ 10.) Non-party JH Retail Management, Inc. subsequently purchased a commercial general liability policy (the "Policy") from Travelers. (*Id.* ¶ 21.) The Policy covered MPAA over the period from December 31, 2014 through December 31, 2017 and insured against third-party claims for "property damage," defined to include "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." (*Id.* ¶¶ 21, 23, 25.) It excluded "property damage" that MPAA "knew . . . had occurred, in whole or in part," along with "any continuation, change, or resumption" of such previously known "property damage." (*Id.* ¶ 23.)

LA Fitness filed suit against MPAA in February 2017. It alleged that it was forced to close the swimming pool as a result of the worsening roof damage. (*Id.* Ex. F ¶ 13.) LA Fitness tied its loss of use to MPAA through only one theory: that the roof's continued deterioration had forced it to close the pool below. (Dkt. 18 ¶ 20; *Id.* Ex. F ¶¶ 13-14, 20-21, 27-32, 36-38.) MPAA sought coverage for the LA Fitness lawsuit under the Policy. (Dkt. 18 ¶ 26.) Travelers declined,

arguing in part that MPAA's knowledge of the roof damage excluded coverage for loss of use of the pool. (*Id.*; *id.* Ex. H.) After the 2017 lawsuit settled, MPAA brought this action, alleging: (1) that Travelers breached its duty to defend and indemnify MPAA for the 2017 action; (2) that its denial of coverage was a breach of the implied covenant of good faith and fair dealing; and (3) that MPAA was entitled to declaratory relief regarding Travelers' duties under the Policy.

Travelers moves for summary judgment on all three counts, contending that there was no possibility of coverage in connection with LA Fitness's lawsuit, and so it didn't breach any duty to MPAA.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of a factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to show there is a genuine factual issue for trial. *Id.* at 324. An insurer-movant's burden is particularly heavy where, as here, the insured seeks coverage based on a duty to defend: the insurer must demonstrate that there is *no possibility* of coverage. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005).

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The substantive law of California, the forum state, applies to this diversity action. *Bell Lavalin, Inc. v. Simcoe and Erie Gen. Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995). Under California law, the interpretation of an insurance policy

is a question of law. *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647 (2003). Accordingly, this action calls on the Court to determine the parties' intent at the time of contracting, beginning with the contract's clear and explicit language and resolving ambiguity, if any, through application of other rules of contract interpretation. *Id.* at 647–48.

## DISCUSSION

Travelers contends that coverage of the loss of use of the pool is foreclosed by the Policy's known-loss exclusion. It bases its position not on MPAA's knowledge of the pool closures, but on its knowledge, prior to purchasing the Policy, that the roof over the pool was damaged and deteriorating. Under California law, "knowledge [of one insurable loss] does not equate with knowledge of other, distinct [insurable losses.]" *Chu v. Canadian Indemnity Co.*, 224 Cal. App. 3d 86, 98 (1990). But that leaves the obvious question of when losses are "distinct" from one another. *Chu* itself provides the answer: "distinct" doesn't mean that two losses are merely *different*—it means they are "*unrelated*." *Chu*, 224 Cal. App. 3d at 97 (emphasis added). Accordingly, knowledge of a loss's cause amounts to knowledge of the loss, too. *Id.* ("[T]o bar third party liability coverage, the defect *causing* the postsale damage" must have been known to the insured) (emphasis added).

MPAA disputes this broader reading of "distinct" by relying on *Kaady v. Mid-Continent Cas. Co.*, 790 F.3d 995 (9th Cir. 2015). In that case, the Ninth Circuit interpreted Oregon law and wrote that, where a known-loss provision "bars coverage of 'property damage' if the insured 'knew that *the* . . . 'property damage' had occurred, in whole or in part," "the claimed damage must be the same as the known damage." *Id.* at 998. At first blush, requiring the damage to be the "same" appears more stringent than California's emphasis on relatedness. But the difference is semantic rather than substantive: two sentences after MPAA's quoted language, *Kaady* clarifies that the Oregon

standard is the same as the California standard stated in *Chu*: "the claimed damage must be *related* to the known damage" to be "the same." *Id.* at 999.

A known-loss provision, then, can exclude coverage where the claimed loss is related to the known loss. And the Policy adopts its own standard of relatedness: the claimed loss is excluded if it is a "continuation, change or resumption" of known property damage. (Dkt. 18 ¶ 23). The plain meaning of this phrase, particularly "continuation," includes property damage caused by the known property damage: a "continuation" is "a thing that . . . follows from something else." *Continuation*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/continuation (accessed April 23, 2021); *see also Continuation*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/continuation (accessed April 23, 2021) (continuation is "something that continues, increases, or adds"); *Alkemade v. Quanta Indem. Co.*, 687 Fed. Appx. 649, 652 (9th Cir. 2017) (Under Oregon law, same phrase includes "causal relatedness").

MPAA could only have a claim if it could be liable to LA Fitness for covered "property damage." (Dkt. 18 Ex. G at TR00118.) It could only be liable if LA Fitness proved its lone theory of causation, that it was forced to close the swimming pool as a result of the roof damage. (*Id.* Ex. F ¶ 13.) And if LA Fitness managed to prove that theory, it would have proven, too, that the loss of use was a "continuation, change, or resumption" of the known roof damage, and thus excluded from the Policy. (Dkt. 18 ¶ 23.) Because MPAA's loss here could only fall within the coverage provisions of its Policy if it *also* fell within an exclusion, Travelers has carried its burden of demonstrating that there was no possibility that the Policy would cover MPAA's losses.

MPAA has one arrow left in its quiver: it argues that the "known loss" doctrine can't bar coverage for losses that, though foreseeable, are nevertheless uncertain to occur within the policy period. (Dkt. 23 at 8–10.) But

this argument misunderstands that doctrine, which renders events that are neither "contingent [n]or unknown" *uninsurable*. *Montrose*, 10 Cal. 4th at 689–90; *see also* Cal. Ins. Code §§ 22, 250. The California statutes governing insurance don't permit courts to interpret a third-party insurance contract as providing insurance for "known liabilities." *Id.* at 692. The *Montrose* court accordingly rejected an insurer's attempt to avoid coverage by arguing that the risk at issue was wholly uninsurable, writing that "as long as there remains uncertainty about damage . . . there is a *potentially insurable* risk for which coverage may be sought." *Id.* at 692–93 (emphasis added). Whether a particular policy covers such a potentially insurable risk, though, is a different question. And as discussed above, MPAA and Travelers agreed to exclude a class of insurable risks that includes MPAA's claimed loss here.

## CONCLUSION

Travelers had no duty to defend or indemnify MPAA in connection with litigation over a loss that was a continuation of the known roof damage. Its refusal to do so can't support any of MPAA's claims for breach of contract, breach of the duty of good faith and fair dealing, and declaratory relief. Travelers is entitled to summary judgment on MPAA's claim for breach of contract, and because MPAA's second and third claims rise and fall with the breach of contract claim, Travelers is also entitled to summary judgment on those claims.

Travelers' motion for summary judgment is **GRANTED** as to all three of MPAA's causes of action. (Dkt. 20.) The Clerk is directed to enter judgment in favor of Travelers and close the case.

**IT IS SO ORDERED**.

Dated: April 26, 2021

_____
**HONORABLE LARRY ALAN BURNS**
United States District Judge